## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

              Plaintiff,

    V.                                       Case No. 11-CV-460 WJ/LFG

ROBERT NIPPER, SHEILA NIPPER,
JOHN A. KIRSCHKE, and
CAROLYN KIRSCHKE,

              Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART UNITED STATES'MOTION FOR SUMMARY JUDGMENT
## and
## GRANTING UNITED STATES' MOTION TO DISMISS COUNTERCLAIM

       THIS MATTER comes before the Court on the United States' Motion for Summary

Judgment (**doc. 65**), filed May 25, 2012, and Motion to Dismiss Counterclaim (**doc. 70**), filed

June 18, 2012.  Because the two motions involve inter-related matters, the Court will resolve

both within this Memorandum Opinion and Order.

### BACKGROUND

       Defendants Sheila Nipper and Robert Nipper are a husband and wife who were the

president and vice-president respectively of Ruah Enterprises, Inc. ("Ruah Enterprises").  In

1999 the Nippers formed Ruah Enterprises, a hospice and home health services company.  Ruah

Enterprises began with 40 employees, and grew to 76 employees over the time period from its

inception in 1999 to 2003.  During that period, Ruah Enterprises withheld its employees' income

taxes and the employees' portion of FICA and Medicare taxes from its employees' paychecks.

But, none of those withheld funds were ever remitted to the government.  The total amount

withheld during this period was $823,161.43.  Ruah Enterprises did not file 941 returns during

the tax periods at issue.  However, on January 25, 2003, Sheila Nipper executed self-reported

941 returns for Ruah Enterprises for all of the periods at issue.

On September 5, 2003, Robert and Sheila Nipper were assessed with Trust Fund

Recovery Penalties for the amount of the withheld funds.  As of May 25, 2012, with accrued

interest, this liability totals $1,180,665.61.

Ruah Enterprises was a family affair.  In addition to Mr. and Mrs. Nipper, who were the

vice-president and president, the other officers were also family members: Kristopher Pacheco,

son of Sheila Nipper and step-son of Robert Nipper, was the chief financial officer ("CFO");

Stephanie Pino, the daughter of Sheila Nipper and step-daughter of Robert Nipper, was the

treasurer; and Sarah Smith, the daughter of the Nippers, was the secretary.  These other

individuals have also been assessed Trust Fund Recovery Penalties along with Mr. and Mrs.

Nipper.

Robert Nipper, in addition to being the vice-president, was on the board of directors of

Ruah Enterprises, and regularly attended board meetings.  He owned 29% of the company, and

Sheila Nipper owned 51%.  From 2000 to 2002, Robert Nipper received an average salary of

$42,000 from Ruah Enterprises for his role as an officer of the company.  In 1999 Mr. Nipper

was also self-employed as a landscaper, but after 1999 his role at Ruah Enterprises was Robert

Nipper's only employment.

While Robert Nipper played a role at Ruah Enterprises, his role was somewhat

perfunctory.  He advised his wife on employee matters, was a signatory on all Ruah Enterprises

checking accounts, and signed at least a few loans, leases, and financing statements on behalf of

Ruah Enterprises, even apparently having a lien placed upon his personal property by a creditor of Ruah Enterprises.[1]

Kristopher Pacheco, the CFO, was the employee at Ruah Enterprises who mostly handled the payroll.  At the time he began working at Ruah Enterprises, he was 25 years old and had no college education, facts of which Mr. Nipper was aware.  Mr. Nipper asserts that Kristopher Pacheco should have paid the delinquent payroll taxes, but that Mr. Nipper did not check to see that the taxes were being paid because he did not feel as though that was his job to do.

In 2000, Ruah Enterprises hired Steve Margulin to prepare its 1999 corporate income tax return.  Mr. Margulin discussed the fact that the payroll taxes were not being paid, and Mrs. Nipper was not surprised by that fact.

On July 11, 2002, when Ruah Enterprises had already accrued the large majority of its tax liability, Robert and Sheila Nipper purchased 320 acres (the "subject property") via a real-estate contract from Defendants John A. Kirschke and Carolyn Kirschke.  The Nippers purchased the subject property for $208,000.00, with a $50,000 initial payment and $1,509.94 monthly payments.  That monthly amount was reduced to $355.24 by agreement when the Nippers filed for bankruptcy in 2007.  The Nippers have spent approximately $50,000 in improvements on the property, building a house, barn, and fence.  Sheila Nipper admits that she knew of Ruah Enterprises' tax liability at the time that the Nippers purchased the subject property.

The United States brought suit on May 31, 2011, seeking approval to administratively seize and sell the Nippers' interest in the subject property, and the Nippers were served with the United States' Petition to seize their residence on July 27, 2011.  Shortly after being served with

---

[1] While Mr. Nipper attempts to contest this fact, he admitted in his deposition that he took out a personal loan on his credit to be used for the benefit of the company.

these documents, Sheila Nipper sent an undated letter to John and Carolyn Kirschke, requesting that the Kirschkes default the Nippers from their ownership interest in the subject property. The letter suggested that the Nippers were requesting to be defaulted, and to change from buyer to tenant while continuing with the same payments. Additionally, the letter suggested that the Nippers anticipated beginning again at some point to pay towards the balance owed the Kirschkes. Mrs. Nipper sent a second letter on August 26, 2011, apparently responding to expressed concerns of the Kirschkes that the default was illegal. This second letter implied that the default was an attempt to protect the subject property from seizure in response to the actions of the IRS. There are no reply letters from the Kirschkes.

On August 12, 2011, the Nippers responded to the United States' petition, arguing that they had forfeited any interest in the subject property. The Kirschkes sent a notice of default to the Nippers on August 11, which was received on August 15. The default was based upon $1,148.52 in past-due late fees. At the time of the notice of default, the Nippers owed the Kirschkes a balance of $21,174.00 plus the late fees, having thus far paid the Kirschkes approximately $240,000.00 under the real-estate contract.

The Kirschkes sent notices of the default to the United States Attorney's Office in New Mexico, the Attorney General of the United States, and the Secretary of the Treasury, both in Washington, D.C., in order to divest the tax lien from the subject property. They subsequently recorded the warranty deed transferring the subject property to themselves on September 27, 2011.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact and one party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(c).  The mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; there must be no genuine

issue of *material* fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Only

factual disputes that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment.  *Id.* at 248.

## DISCUSSION

26 U.S.C. §§ 3102(a) and 3402(a) require employers to withhold federal social security,

Medicare, and income taxes from the wages of their employees, and to remit the withheld funds

to the IRS.  The funds are held in trust for the United States.  26 U.S.C. § 7501(a); *Finley v.

United States*, 123 F.3d 1342, 1344 (10th Cir. 1997).   If the employer fails to remit the withheld

funds, under 26 U.S.C. 6672 "the officers or employees of the employer responsible for

effectuating the collection and payment of trust-fund taxes who willfully fail to do so are made

personally liable to a 'penalty' equal to the amount of the delinquent taxes."  *Slodov v. United

States*, 436 U.S. 238, 244–45 (1978).

The United States seeks, under section 6672, to hold Mr. and Mrs. Nipper personally

liable for the withheld taxes of Ruah Enterprises.

Defendants make six arguments against the United States' motion: (1) that liability

should not be enforced against Sheila Nipper because of certain actions of the IRS; (2) that the

Trust Fund Recovery Penalty is not properly assessed against Robert Nipper; (3) that the amount

of the Trust Fund Recovery Penalty is incorrect; (4) that the IRS may not take funds from

Defendant Robert and Sheila Nipper's Social Security Disability Benefits; (5) that the subject

property may not be taken to satisfy the Trust Fund Recovery Penalty; and (6) that the subject

property should not be foreclosed upon because of Mr. Nipper's community property and homestead interests.

**I.**     Liability as to Sheila Nipper

Mrs. Nipper admits that she is a responsible individual under Section 6672, and thus that she is personally liable for any delinquent taxes.  However, Mrs. Nipper argues that any liability should not be enforced against her.  She argues that, when Ruah Enterprises was on the cusp of being sold to a potential purchaser for a large sum of money which would have covered the tax liabilities, the sale was thwarted because IRS agents refused to guarantee the potential purchaser that no tax liabilities later discovered to be owing by Ruah Enterprises would be assessed against the purchaser/successor.

Mrs. Nipper provides no authority in support of her arguments.  While the Court understands Mrs. Nipper's frustration at the unsuccessful attempt to sell Ruah Enterprises to American Hospice, the Court sees no basis in law for refusing to enforce tax liabilities against Mrs. Nipper because the IRS did not accede to Defendants' requests to facilitate that sale by waiving successor liability.  Indeed, "the liability of a responsible person imposed by § 6672 is separate and distinct from [that] imposed upon the employer." *Rocha v. U.S.*, 142 F. Supp. 2d 1277, 1285 (D. Or. 2001) (quoting *Balzer v. United States,* 2000 WL 1130075, *6 (N.D.Cal.2000)).  "[A]s the liability of the employer is separate and distinct from that of the responsible person, the United States' lack of due diligence against the employer would not relieve the responsible person's liability." *Reph v. United States*, 615 F.Supp. 1236, 1242 (N.D. Ohio 1985).  *See also Rocha*, 142 F. Supp. 2d at 1285 (collecting cases).  Therefore, the Court rejects Mrs. Nipper's argument that liability should not be enforced against her.

**II.**      Liability of Robert Nipper

26 U.S.C. § 6672 provides for personal liability for tax liabilities for certain persons.

"Specifically, the penalty under § 6672 can be assessed against any officer or employee of a

corporation who: (1) is under a duty to 'collect, truthfully account for, and pay over any tax

imposed by this title'—*i.e.*, a 'responsible person'; and (2) 'willfully fails' to do so."  *Taylor v.*

*I.R.S.*, 69 F.3d 411, 413 (10th Cir. 1995).  Mr. Nipper contests his liability on both grounds: (1)

he is not a responsible person under section 6672; (2) he did not willfully fail to comply with the

statute.

*A.*      Whether Robert Nipper Is a "Responsible Person"

26 U.S.C.A. § 6671(b) defines a person for purposes of § 6672 thus: "The term 'person,'

as used in this subchapter, includes an officer or employee of a corporation, or a member or

employee of a partnership, who as such officer, employee, or member is under a duty to perform

the act in respect of which the violation occurs."

> Courts have generally given broad interpretation to the term "responsible person"
> under section 6672.  A person is responsible within the meaning of the statute if
> that person is required to collect, truthfully account for or pay over any taxes
> withheld from the wages of a company's employees.  The responsible person
> generally is, but need not be, a managing officer or employee, and there may be
> more than one responsible person.  Indicia of responsibility include the holding of
> corporate office, control over financial affairs, the authority to disburse corporate
> funds, stock ownership, and the ability to hire and fire employees.  Among other
> things, therefore, a corporate officer or employee is responsible if he or she has
> significant, though not necessarily exclusive, authority in the general management
> and fiscal decisionmaking of the corporation.

*Denbo v. U.S.*, 988 F.2d 1029, 1032 (10th Cir. 1993) (internal citations and quotation marks

omitted).

Defendants assert that Mr. Nipper was vice-president in name only, and had no actual

role in the running of the business.  They assert that Mr. Nipper was a signatory on checking

accounts simply as a matter of form, but that in reality he did not sign checks or any other

7

documents without the authorization of Mrs. Nipper.  Defendants finally assert that the few

examples the United States provides of documents signed by Mr. Nipper were the only such

documents, and that they were signed by Mr. Nipper only at the request of an unavailable Mrs.

Nipper.

Nevertheless, Defendants do not contest that Mr. Nipper (1) was a board member,

authorized to manage the business and affairs of Ruah Enterprises by the articles of

incorporation, and also authorized to hire individuals to manage the day to day affairs; (2)

regularly attended board meetings, thus fulfilling his role as a board member; (3) owned 29% of

Ruah Enterprises; (4) received approximately $40,000 per year in salary for his role in Ruah

Enterprises; (5) had authority as a signatory on the company banking accounts to write checks;

(6) had authority to sign financing contracts and loans on behalf of the company[2]; (7) took out a

personal loan for the use of the company[3]; (8) provided advice on employee matters to Mrs.

Nipper.

Mr. Nipper argues that he did not exercise his authority, except occasionally and at the

request of Mrs. Nipper.  However, "[t]he existence of such authority, irrespective of whether that

authority is actually exercised, is determinative.  *Muck v. U.S.*, 3 F.3d 1378, 1381 (10th Cir.

1993) (quoting *Denbo v. United States*, 988 F.2d 1029, 1032 (10th Cir. 1993)).  "Liability is not

confined to the person with the greatest control."  *Id.*  Mr. Nipper may indeed have done very

little in return for his salary.  However, the current question is whether he could have—and

should have—paid the company's taxes.  "[A] court must determine whether the defendant was a

person who *could* have seen to it that the taxes were paid, i.e., a person with the ultimate

authority over which corporate obligations were paid who can fairly be considered responsible

---

[2] *See, e.g.*, doc. 65-10.
[3] Robert Nipper Dep. 136:21–137:8; Sheila Nipper Dep. 62:20–63:12.

for the corporation's failure to pay its taxes." *Young v. U.S.*, 609 F. Supp. 512, 518 (N.D. Tex. 1985) (citing *Liddon v. United States*, 448 F.2d 509, 512–513 (5th Cir. 1971), *cert. denied*, 406 U.S. 918 (1972)) (emphasis added).  While Mrs. Nipper was clearly more responsible than Mr. Nipper for the corporation's failure to pay its taxes, Mr. Nipper *could* have ensured that the taxes were paid.  In fact, Mr. Nipper stated under oath in the affidavit attached to Defendants' Response (doc. 68-1) to the United States' Motion for Summary Judgment, that "[i]f I had known before [2003 about the unpaid taxes] I would have corrected the situation."  Mr. Nipper implies that he had authority to ensure that taxes were being paid.  Whether he was aware of the unpaid taxes is a separate question to whether he was a responsible person.  Therefore, the Court concludes that, considering the totality of the circumstances according to uncontested material facts, Robert Nipper was a "responsible person" under section 6672.

> *B.*     Whether Robert Nipper Acted Willfully

The second requirement for the imposition of liability under section 6672 is that Robert Nipper must have acted willfully in failing to remit Ruah Enterprises' withheld taxes to the government.

> Generally, a responsible person's failure to pay over withholding taxes may be described as willful under two theories.  First, under what might be called a theory of actual knowledge or intent, a responsible person's conduct is willful if that person acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes.  Second, a responsible person can also act willfully if she acts with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the government.

*Finley v. United States*, 82 F.3d 966, 971 (10th Cir. 1996) (internal quotations and citations omitted).  The United States seeks to impose liability upon Mr. Nipper under the second theory: that he acted with reckless disregard of an obvious risk that Ruah Enterprises' payroll taxes were not being paid to the government.

Negligence is not enough to satisfy the willfulness requirement; however, "[a] responsible person's failure to investigate or to correct mismanagement after being notified that withholding taxes have not been paid satisfies the section 6672 willfulness requirement." *Denbo*, 988 F.2d at 1033 (citations omitted).

The United States argues that Mr. Nipper displayed reckless disregard because, as an officer of the company, he disregarded several obvious facts. First, he disregarded the imprudence of entrusting all financial affairs of a company with 40–78 employees to a young relative with no college education or other qualifications, without bothering to supervise him at all. Second, he disregarded the unaccounted-for additional $230,000 per year that was available to the company because of its failure to remit that amount to the government.

The United States also provides evidence that Mr. Nipper was informed of the failure to pay taxes; however, in its review of the United States' motion, the Court must make all permissible inferences of fact in favor of Defendants, and Mr. Nipper provides contrary evidence that he was not informed of the failure to pay taxes until the end of 2002 or beginning of 2003. Therefore, for purposes of the current motion, the Court must determine whether the obvious nature of the omission, and Mr. Nipper's neglect of the affairs of the company, rise to the level of reckless disregard.

Mr. Nipper provides evidence that he thought of himself as a purely formal part of the company, and that while he acceded to his wife's wishes in bearing the title of vice-president and attending board meetings, he had no actual involvement in the company. While such lack of involvement in fact does not prevent him from being a responsible person, it is relevant to whether he acted willfully. Additionally, the United

States does not provide uncontested facts related to how sophisticated a business manager Mr. Nipper was. The Court knows only that Mr. Nipper knew nothing about his wife's field of home healthcare, and that he was self-employed as a landscaper in 1999, facts which do not carry any convincing proof that Mr. Nipper was a sophisticated business manager that should have had a clear view of his responsibilities and of the sorts of concerns a large business has.

The Court concludes that while Mr. Nipper's neglect of any responsibility or duties in managing the company was likely negligent, there is a dispute of material fact as to whether it rose to the level of reckless disregard in order to satisfy the second requirement for section 6672 liability. Accordingly, the Court denies the United States' motion for summary judgment as to this particular element of the case.

**III.**     Amount of the Assessment

Defendants contest the amount of the assessment, making three arguments: (1) Defendants provided the IRS with amended 941 forms which show lesser amounts owing on the payroll tax; (2) the IRS did not, as Mrs. Nipper requested, credit the approximately $30,000 to the trust fund penalty account, instead applying that sum to the Ruah Enterprises payroll tax liability; (3) the IRS levied $4,975 from Defendants' Social Security Disability benefits, which amount should be refunded to Defendants and the assessment adjusted accordingly.

*A.*     Amended 941 Forms

Defendants argue that they submitted supplemental 914 returns which reflect a reduced payroll-tax liability, and that those returns should be used in order to arrive at an adjusted total liability. Defendants provide no legal authority in support of their arguments.

The IRS has discretion to accept an amended return or not.  *Koch v. Alexander*, 561 F.2d 1115, 1117 (4th Cir. 1977).  Indeed, it "would be utterly disruptive of the administration of the tax laws if a taxpayer could disregard his return and automatically change an assessment based thereon by making an amended return in his favor long after the expiration of the time for filing the original return."  *Dover Corp. & Subsidiaries v. C.I.R.*, 148 F.3d 70, 73 (2d Cir. 1998) (quoting *Koch*, 561 F.2d at 1117).  Defendants provide no evidence as to why the amended returns are more accurate than the original returns, or why the original returns are inaccurate. Therefore the fact that Defendants filed amended returns reflecting a smaller liability does not prevent the IRS from seeking summary judgment as to the liability reflected in Defendants' original 914 returns.

      *B.*      $30,000 Credit

Defendants next argue that the IRS should have credited the approximately $30,000 in sale proceeds towards the trust fund liability, rather than the non-trust fund portion of Ruah Enterprise's tax liability.  Defendants argue that they requested that the sale proceeds be applied to the trust fund liability, in order to reduce their personal liability.  Ordinarily, as the Government admits, taxpayers can designate how voluntary payments are to be applied.  *See O'Dell v. United States*, 326 F.2d 451, 456 (10th Cir. 1964).  However, the IRS provided a Conditional Commitment Letter to Discharge Certain Property from Federal Tax Lien, stating that the IRS agreed to discharge the federal tax lien upon Ruah Enterprises in exchange for $30,410.45, and also stating that "[t]he discharge is also conditioned upon the taxpayer's agreement that the payment will be applied in the best interest of the Government."  (Doc. 71-3 at 3, Ex. 2 to Gov't's Reply in Support of its Motion for Summary Judgment.)  Accordingly, because the IRS conditioned the agreement upon applying the money as it chose, and Defendants

12

accepted the agreement, Defendants provide no basis upon which they can contest the IRS's

choice of how to apply the proceeds, and the Court therefore rejects this aspect of Defendants'

arguments, and grants this aspect of the United States' motion.

**IV.**   **Social Security Disability Benefits**

Defendants' final argument against the assessment amount involves the IRS's levy upon

Defendants' Social Security Disability Benefits.  This issue is also the subject of the United

States' Motion to Dismiss Counterclaim, and therefore the Court will also address and resolve

the arguments made with regard to that motion.

Defendants argue that 26 U.S.C. 6334(a)(11), which exempts payments such as Social

Security Disability Benefits from levy, and 26 U.S.C. 6331(h)(1), which provides for a levy

upon 15% of any federal payments, such as Social Security Disability Benefits, are in conflict.

However, Defendants cite no legal authority for their argument, and the Court sees no conflict.

Section 6334 provides for exemption from general levy, and section 6331(h)(1) provides for a

special, reduced levy for certain otherwise exempt items.  The plain language of section

6331(h)(1) supports this construction:

> If the Secretary approves a levy under this subsection, the effect of a levy on
> specified payments to or received by a taxpayer shall be continuous from the date
> such levy is first made until such levy is released.  *Notwithstanding section 6334*,
> such continuous levy shall attach to up to 15 percent of any specified payment
> due to the taxpayer.

*Id.* (emphasis added).  "If the terms of the statute are clear and unambiguous, the inquiry ends

and we simply give effect to the plain language of the statute."  *Toomer v. City Cab*, 443 F.3d

1191, 1194 (10th Cir. 2006) (citing *Sullivan v. Stroop*, 496 U.S. 478, 482 (1990)).  Therefore, the

Court rejects Defendants' arguments that Social Security Disability Benefits are not subject to a

15% continuous levy.  Additionally, as Defendants admit, their counterclaim is procedurally

flawed, having been styled as a "conversion" claim, and having been brought before exhaustion

of the required administrative remedies.  Accordingly, the Court grants the United States'

Motion to Dismiss Counterclaim, and grants the United States' Motion for Summary Judgment

as to this aspect of Defendants' arguments.

**V.**     The Availability to the United States of the Subject Property

Defendants Sheila and Robert Nipper argue that, as a result of the default of the property,

they have no interest in the subject property, and thus that the United States lien on that interest

no longer attaches to the subject property.  The United States makes four arguments in support of

its motion: (1) the Defendants did not properly divest the United States lien under 26 U.S.C. §

7425; (2) the Nippers fraudulently transferred the subject property; (3) the Kirschkes hold title to

the subject property as nominees, or as trustees of a resulting trust for the Nippers; and (4) the

Nippers' forfeit of the property shocks the conscience.

Congress has provided for divestment of a federal tax lien under 26 U.S.C. § 7425(b),

which states that when proper notice is given to the IRS of a nonjudicial sale of property subject

to an IRS lien, then the IRS will follow the local law regarding divestment of liens.  A forfeiture

of a land sales contract, such as that involving the subject property, is statutorily deemed to be a

nonjudicial sale under 7425(b).  26 U.S.C. § 7425(c)(4).  If the United States receives proper

notice of the divestiture of its lien, then it has 120 days to redeem.  26 U.S.C. § 7425(d).

However, if the United States does not receive proper notice, then its lien is not divested, and

continues undisturbed on the property.  *Russell v. United States*, 551 F.3d 1174 (10th Cir. 2008).

The Defendants do not contest the legal proposition that the United States' lien remains

on the subject property unless divested under section 7425.  Defendants make two arguments as

to why they have satisfied the requirements of section 7425: first, that they gave notice as

14

required; second, to the extent legal notice is governed by 301.7425-3(a)(1), that regulation is unlawful.

Defendant John Kirschke attempted to serve notice in order to divest the United States of its lien by mailing certified letters on August 29, 2011, to the U.S. Attorney General, the U.S. Attorney for the District of New Mexico, and the Secretary of the Treasury, which letters notified the recipients of the proposed forfeiture of the subject property within 25 days of the date of the letter.  Then, the Special Warranty Deed transferring the property back to the Kirschkes from the Nippers was recorded on September 27, 2011.

As the Government argues, and as Defendant acknowledges, notice sufficient under section 7425 to divest the United States of its lien on the subject property is not a simple proposition.  Section 7425(c) states that notice of a divestment of an IRS tax lien shall be given "in accordance with regulations prescribed by the Secretary."  Treasury Regulation § 301.7425-3(a)(1) directs the prospective notice-giver to IRS Publication 786, which states that notice be given to the regional IRS Collection Advisory Group Manager.  Finally, IRS Publication 4235 provides the actual contact information for the Collection Advisory Manager in Phoenix, Arizona.

Defendants argue that, though they did not comply with the full extent of the notice requirements, the Court should deem sufficient actual notice to have been given to satisfy section 7425.  However, Treasury Regulation § 301.7425-3(a)(1) states that "a notice of sale is not effective if it is given to an office other than the office listed in the relevant publication."  *See also Colorado Property Acquisitions, Inc. v. United States*, 894 F.2d 1173, 1175 (10th Cir. 1990) ("We recognize the harshness of [the notice requirements of section 7425].  This rule allows the IRS to receive actual notice, as it did in the instant case, ignore the notice and still retain the right

to levy upon the property.  The remedy, if any there is to be, must come from Congress and not

from the Courts.").  Therefore the Court rejects Defendants' arguments that the August 29 letters

were sufficient notice to divest the tax lien.

Defendants next argue that, even if the August 29 letters were not effective service, the

Kirschkes sent a letter to the proper contact on January 27, 2012.  Section 7425(c)(1) requires

that notice be given "not less than 25 days prior" to the transfer, not several months after.

Therefore the January 27 letter does not serve as proper notice to divest the tax lien.

Finally, Defendants make a rather strained argument that Treasury Regulation §

301.7425-3(a)(1) is unlawful, referring as it does to IRS Publications rather than containing the

complete notice instructions within the bounds of the regulation itself.  Defendants provide no

legal authority for this proposition, and this scheme of providing for proper notice has been

enforced by the Circuit court, see *Colorado Property Acquisitions*, 894 F.2d at 1175, and so this

Court sees no basis in law for Defendants argument, and rejects it.

Accordingly, because the proper divestment notice procedures were not observed, the

default of the subject property did not divest the United States of its tax lien on the property, and

the United States may seek to satisfy the Nipper's Trust Fund Recovery Penalty against the

subject property.

**VI.**     Foreclosure

Defendants argue that the subject property should not be foreclosed upon because of

Robert Nipper's community property interests in it, and also because of Robert Nipper's state-

law homestead exemption.  Any questions with regard to those state-law provisions would be

moot if Robert Nipper is personally liable for the Trust Fund Recovery Penalty.  Therefore, the

Court will wait to address them until the liability of Robert Nipper has been resolved.

## CONCLUSION

For the foregoing reasons,

- the Court GRANTS the United States Motion to Dismiss Counterclaim;

- the Court GRANTS the United States Motion for Summary Judgment in part, holding that Sheila Nipper is liable for the Trust Fund Recovery Penalty, that the amount of the assessment is correct, and that Robert Nipper is a "responsible person" under 26 U.S.C. § 6672.

- the Court DENIES in part the United States Motion for Summary Judgment, specifically as to the question of whether Robert Nipper acted willfully in failing to remit trust fund taxes so as to be liable under 26 U.S.C. § 6672;

- because the question of whether Robert Nipper acted willfully must be further adjudicated, and adjudication of that issue is necessary to a determination of liability for Robert Nipper, the Court DENIES that portion of the United States Motion for Summary Judgment requesting an order of foreclosure to be entered for the subject property;

After the above rulings, the only matters remaining to be further adjudicated in this case are whether Robert Nipper acted willfully in failing to remit the trust fund taxes to the IRS, and entry of foreclosure on the subject property.  The IRS tax liens shall remain in full force and effect on the subject property pending final adjudication of the Court on the remaining claims.

**SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE